IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANDREW E.,[1]  )
              )
     Plaintiff,  )
              )
vs.           )   Civil No. 19-cv-561-DGW[2]
              )
COMMISSIONER OF SOCIAL  )
SECURITY,     )
              )
     Defendant.  )

## **MEMORANDUM and ORDER**

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying his application for Supplemental Security Income (SSI) Benefits pursuant to 42 U.S.C. § 423.

## **Procedural History**

Plaintiff applied for benefits in November 2011, alleging disability beginning on August 1, 2000. His claim was denied in December 2013. (Tr. 18-28). Plaintiff sought judicial review, and the case was remanded. (Tr. 658-679). The claim was denied again by the same ALJ on July 25, 2017. (Tr. 590-606). The July 2017 is the final agency decision subject to judicial review. Plaintiff exhausted administrative remedies and filed a timely complaint with this Court.

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 20.

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

1. The Administrative Law Judge "cherry picked" portions of the opinion of the state agency consultant as opposed to assessing the overall weight given to the opinion.

2. The Administrative Law Judge's ultimate residual functional capacity is inconsistent with the decision.

3. The Administrative Law Judge failed to articulate a clear reason for discounting the statements and testimony of the claimant's parents.

4. The Administrative Law Judge made a clear error in his analysis of GAF scores.

## Applicable Legal Standards

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work?   20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled.   A negative answer at any step, other than at step 3, precludes a finding of disability.   The plaintiff bears the burden of proof at steps 1–4.   Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy.   *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited.   "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).   Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.   *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).   The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.   *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).   However,

while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

The ALJ followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. The ALJ found that plaintiff had the severe impairment of depression.

The ALJ made the same RFC assessment as he had before: plaintiff was able to perform work at all exertional levels, limited to simple, routine tasks that:

- Involve no more than one or two changes in work duties or settings per shift;
- Can be performed independently;
- Involve working primarily with things, not people;
- Involve only superficial interaction with co-workers and supervisors;
- Involve no direct interaction with the general public; and
- That are in non-public settings.

Based on the testimony of a vocational expert, the ALJ found that plaintiff was able to do jobs that exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1. **Agency Forms**

Plaintiff was born in 1982 and the alleged onset date of August 1, 2000, was his 18th birthday. (Tr. 129). He was about to turn 35 on the date of the ALJ's decision.

Plaintiff's mother submitted a report stating that plaintiff does not interact with others and has anxiety and stress when not in familiar surroundings. He watched TV, listened to music and played video games. He had poor concentration, understanding and focusing. He obsessed about technology, time and how old he is. He had no success with any medications, and they caused him many side effects. (Tr. 154-164).

2. **Evidentiary Hearing**

The ALJ held a second evidentiary hearing in April 2017. Plaintiff was represented by an attorney. Plaintiff and his parents, with whom he lived, appeared but did not testify because their testimony would have been the same as their testimony at the first hearing. (Tr. 624).

The testimony from the first hearing was summarized in the Court's previous order. (Tr. 658-679). In brief, plaintiff's only work had been a part time job in a restaurant for 11 months and a part-time job for the Village of Shiloh that lasted for 3 months. He was not looking for work. On a typical day, he watched TV and maybe made a sandwich. (Tr. 39-42). He left the jobs that he had in the past because "they were too overwhelming." (Tr. 47). Plaintiff's father testified that his son was "always by himself" and described him as a "lost soul." (Tr. 53-54). Plaintiff's mother testified that they first noticed plaintiff having depressive

5

symptoms when he was in high school. She said that plaintiff had tried everything that the counselors and doctors suggested, and nothing helped. (Tr. 55-57).

3.  **Relevant Medical Records**

The medical records up to the time of the first ALJ decision were summarized in the Court's previous order. (Tr. 658-679).

The only additional records submitted after remand are counseling records from September 2, 2015, through March 15, 2017. (Tr. 768-777). The records contain only the documents from the intake session and a letter from the counsellor stating that plaintiff was seen every 2 to 3 weeks through March 2017. The intake note states that plaintiff "has to be active in counselling services to remain covered under his parent's insurance." (Tr. 770). He was not taking any psychiatric medications during that period. (Tr. 768).

4.  **Consultative Psychological Exam**

Harry J. Deppe, Ph.D., performed a consultative psychological exam on January 26, 2012. Plaintiff said that he had seen a psychiatrist about 5 or 6 months earlier because he was depressed, but that he was not currently being treated and was not taking any medication. He said that his appetite and sleep were fine. On exam, his mood and affect were unremarkable. He had no formal thought disorders. His responses to questions were coherent and relevant. Dr. Deppe concluded that plaintiff's abilities to relate to others, to understand and follow simple instructions, and to maintain attention to perform simple repetitive tasks were intact. He had good ability to withstand the stress of day-to-day work. Dr. Deppe diagnosed adjustment disorder, with depressed mood, in remission.

(Tr. 226-229).

    5.    **State Agency Consultant's Opinion**

On February 3, 2012, Howard Tin, Psy.D., assessed plaintiff's mental RFC using an agency form called the Mental Residual Functional Capacity Assessment. (Tr. 230-233). Section I of the form consists of a list of mental activities. The consultant is asked to set forth his "summary conclusions" by checking a box to rate the severity of limitation as to each activity. The levels of severity are (1) not significantly limited, (2) moderately limited, (3) markedly limited, (4) no evidence of limitation in this category, and (5) not ratable on available evidence.

Dr. Tin checked the box for "moderately limited" for the following activities:

- Ability to maintain attention and concentration for extended periods;

- Ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;

- Ability to work in coordination with or proximity to others without being distracted by them;

- Ability to interact appropriately with the general public;

- Ability to get along with coworkers without distracting them or exhibiting behavioral extremes;

- Ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.

He checked the box for "not significantly limited" for ability to understand and remember detailed instructions, ability to carry out detailed instructions, and ability to carry out very short and simple instructions. All other categories were rated as either "not significantly limited" or "no evidence of limitation."

In Section III of the form, the consultant is directed to explain his "summary

7

conclusions in narrative form. Include any information which clarifies limitation or function." Here, Dr. Tin wrote, in part, "Claimant can remember locations or work-like procedures and can also understand and remember short simple instructions although the individual has difficulty remembering detailed instructions....Claimant has difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods of time, however the person is capable of performing simple tasks." (Tr. 232).

### **Analysis**

In the prior decision, the ALJ gave "great weight" to Dr. Tin's opinion and found that plaintiff had a moderate limitation in maintaining concentration, persistence, or pace. The Court remanded because the ALJ failed to account for that limitation in the RFC assessment. See, Tr. 658-679. This time around, instead of assigning a weight to Dr. Tin's opinion as a whole, the ALJ went through the opinion point by point and explained why he accepted or rejected each point. (Tr. 599-602).

Plaintiff first argues that the ALJ "cherry-picked" Dr. Tin's opinion rather than assessing the overall weight given to the opinion. He argues that "The ALJ is 'cherry picking' if he adopts some portions and not others." Doc. 18, p. 5. That is incorrect; there is no requirement that the ALJ either accept or reject a medical opinion *in toto*. The cases cited by plaintiff, *Denton v. Astrue*, 596 F.3d 419 (7th Cir.2010), and *Myles v. Astrue*, 582 F.3d 672 (7th Cir.2009), do not support his argument. In *Denton*, the Seventh Circuit cited *Myles* for the proposition that "An ALJ has the obligation to consider all relevant medical evidence and cannot simply

cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton,* 596 F.3d at 425. The ALJ here did not cherry-pick in the sense that the Seventh Circuit uses that phrase. He did the opposite in that, rather than ignoring evidence that would support a finding of disability, he explained why he rejected it. Plaintiff offers no substantive criticism of the ALJ's reasons for rejecting parts of Dr. Tin's opinion. His first point is denied.

Plaintiff next faults the ALJ for incorrectly saying that Dr. Tin rated plaintiff as markedly limited in ability to set realistic goals or make plans independently of others. He is correct in that Dr. Tin rated him as having "no evidence of limitation in this category." (Tr. 231). Based on his incorrect reading of Dr. Tin's report, the ALJ said he accommodated this limitation by restricting plaintiff to simple, routine tasks that involve no more than 1 or 2 changes in work duties or setting per shift. He noted that this kind of work would not require setting realistic goals or making plans independently of others. (Tr. 600). Plaintiff argues that this conflicts with the limitation that he is also restricted to "jobs that can be performed independently." This argument is based on an incorrect understanding of the second restriction.

The ALJ explained that the restriction to jobs that can be performed independently is designed to accommodate plaintiff's social limitations, meaning his ability to work with or around other people. (Tr. 601). A simple, routine job that is performed independently in that it does not require interaction with other people does not necessarily require the ability to set realistic goals or make

9

independent plans. The ALJ posed both those limitations to the VE, along with others, and she testified that there are jobs that can be done with those limitations. Plaintiff does not argue that a person with the limitations assigned by the ALJ could not do the jobs identified by the VE.

In any event, the ALJ's mistake in reading Dr. Tin's opinion is harmless. An ALJ's error is harmless where, having looked at the evidence in the record, the court "can predict with great confidence what the result on remand will be." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). On remand, an ALJ would no doubt accept Dr. Tin's opinion that plaintiff is not limited in ability to set realistic goals or make plans independently of others, which would take care of the contradiction perceived by plaintiff.

For his third point, plaintiff faults the ALJ for not giving significant weight to his parents' statements. The ALJ said that "Significant weight cannot be given to the witnesses' testimony and these reports because the objective medical evidence does not support it. Additionally, they are not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or the frequency and intensity of moods and mannerisms." (Tr. 603). Plaintiff argues that his parents' observations concern subjects that do not require medical training. He is incorrect. His mother's statement that he suffered from "depressive symptoms" beginning in high school and that none of the treatments worked are medical conclusions that she is not qualified to draw. And, his parents' observations of his behavior are relevant only if those behaviors arise out of his mental impairment, which is a medical conclusion. Further, the parents'

testimony largely corroborated plaintiff's own statements and "separate findings are not required where the witness' testimony is not a separate line of evidence, but only serves to corroborate the plaintiff's testimony." *Books v. Chater*, 91 F.3d 972, 980 (7th Cir. 1996); *Carlson v. Shalala*, 999 F.2d 180, 182 (7th Cir. 1993).

Lastly, plaintiff argues that the ALJ made a "clear error" in considering plaintiff's GAF scores. The ALJ noted that a counselor, Patricia Mosbacher, assessed plaintiff's GAF at 40 at her initial interview with plaintiff. The ALJ gave this score little weight because it was the first visit and "the GAF of 40 was not necessarily expected to persist for 12 continuous months, and the record does not show an updated GAF score after several months of treatment." (Tr. 599). Plaintiff claims this is a "clear error" because Cr. Chalfant assessed plaintiff's GAF at 40 in May 2013, and Dr. Chalfant and Ms. Mosbacher practiced at the same office.

Plaintiff's argument misses the mark. The ALJ's statement is not an error, clear or otherwise. The ALJ was correct that the record does not contain a later GAF assessment by *Ms. Mosbacher*. Dr. Chalfant saw plaintiff a total of 10 times. He had 5 visits from July to October 2010 (Tr. 248-259); 1 visit in October 2011 (Tr. 261); 3 visits in March and April 2012 (Tr. 263-267, 476); and 1 visit on April 25, 2013 (Tr. 518). On April 26, 2012, plaintiff reported that he had stopped taking his medication and did not want ECT (electroconvulsive therapy) or counselling. (Tr. 476). The next visit was on April 25, 2013. Plaintiff again said he did not want ECT or medication. He was to continue to see his counselor Patricia. (Tr. 518-519). Dr. Chalfant did not assess plaintiff's GAF in April 2012

or in April 2013. Rather, he filled out a report at the request of plaintiff's lawyer in May 2013. The GAF assessment that plaintiff refers to is contained in that report. (Tr. 521-527). The ALJ gave that report no weight. (Tr. 602-603). Plaintiff does not argue that the ALJ erred in weighing Dr. Chalfant's opinion. Therefore, the fact that Dr. Chalfant assigned a GAF score of 40 in his May 2013 report, which the ALJ rejected, does not establish that it was error to reject Ms. Mosbacher's assessment of a GAF score of 40 at her initial interview with plaintiff.

It is worth noting that "The fifth edition of the DSM, published in 2013, has abandoned the GAF scale because of 'its conceptual lack of clarity ... and questionable psychometrics in routine practice.' American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013)." *Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014). Even before the GAF score was abandoned in psychiatric practice, the Seventh Circuit noted that a GAF score "does not reflect the clinician's opinion of functional capacity" and an ALJ is not required to rely solely on GAF scores "to determine the extent of an individual's disability." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

Plaintiff has not identified an error requiring remand. Even if reasonable minds could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Burmester*, 920 F.3d at 510; *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

## Conclusion

After careful review of the record as a whole, the Court is convinced that the ALJ committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

DATE:  February 21, 2020.

**DONALD G. WILKERSON**
**U.S. MAGISTRATE JUDGE**